**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**GLEN BAHAM,**

          **Plaintiff,**

**v.**                                        **Case No: 8:14-cv-2772-T-36MAP**

**PROPERTY & CASUALTY INSURANCE**
**COMPANY OF HARTFORD,**

          **Defendants.**

_____/

**O R D E R**

    This cause comes before the Court upon Defendant Property & Casualty Insurance Company of Hartford's ("Hartford") Motion to Dismiss Complaint with Prejudice (Doc. 5). Plaintiff Glen Baham ("Baham") responded in opposition to the motion (Doc. 12), and Hartford replied in further support of the motion (Doc. 18). The Court, having considered the parties' submissions and being fully advised of the premises, will grant-in-part and deny-in-part Hartford's Motion to Dismiss.

**I.**    **FACTS and BACKGROUND[1]**

    In this action, Baham asserts a single claim for bad-faith, pursuant to Fla. Stat. § 624.155, based on Hartford's failure to promptly settle a claim for uninsured motorists ("UM") benefits under Baham's automobile insurance policy. Doc. 2, ¶¶ 6, 17, 45-46. In relevant part, the Complaint alleges that Baham was involved in an automobile accident with at-fault motorist Brian Recesso ("Recesso"). _Id._ ¶¶ 9, 11. Recesso carried only $25,000 in bodily injury coverage under

---

[1] This statement of facts is derived from Plaintiff's Complaint (Doc. 2), the allegations of which the Court must accept as true in ruling on the instant Motion to Dismiss. _Linder v. Portocarrero_, 963 F.2d 332, 334 (11th Cir. 1992); _Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp. S.A.,_ 711 F.2d 989, 994 (11th Cir. 1983)

his automobile policy, which was not sufficient to compensate Baham for his serious injuries and lost income. *Id.* ¶¶ 17-18. On November 13, 2008, Baham presented a claim to Hartford for the full UM policy limits of $200,000. *Id.* ¶ 17. On December 4, 2008, Hartford advised Baham that his injuries did not exceed the $25,000 bodily injury limit under Recesso's policy. *Id.* ¶ 18. Baham then provided Hartford with additional documentation of his injuries. *Id.* ¶ 19. On March 3, 2009, Hartford again advised Baham that his injuries did not exceed the $25,000 bodily injury limit under Recesso's policy. *Id.* ¶ 20.

On March 17, 2009, Baham filed a Civil Remedy Notice of Insurer Violation ("CRN") with the Florida Department of Financial Services and Hartford. *Id.* ¶ 21 & Exh H. As grounds for the notice, the CRN identified "Unsatisfactory Settlement Offer" and "Claim Denial." *Id.* The CRN further explained:

> Underlying carrier only has 25000 dollars in coverage. The value of the claim clearly exceeds that amount. Insurance carrier, through it's [*sic*] representative, Pamela Rolfe, in her letter of March 3, 2009, refuses to acknowledge that the value of the claim exceeds the underlying limits despite the serious nature of the injuries, providing no rational explanation for her position and has not attempted to settle claims when, under all the circumstances, it could and should have done so.

*Id.* On May 14, 2009, Hartford responded to the CRN, stating that the information provided did not support valuation of Baham's claim in excess of Recesso's policy limits. *Id.* ¶¶ 22-23. Hartford requested any other available information so that it could continue to evaluate the claim. *Id.* ¶ 23.

On February 24, 2011, almost two years after Baham filed the CRN, Hartford agreed to tender $100,000 in UM benefits. *Id.* ¶ 27. However, Hartford maintained that Baham's UM coverage was non-stacked and that $100,000 was the "full individual policy limits available under the UM portion of Mr. Baham's policy." *Id.*

On October 12, 2012, Baham filed an action against Hartford in state court, with claims for UM benefits and a declaratory judgment. *Id.* ¶ 28. On October 16, 2012, Baham filed a second CRN, in which he demanded the remaining $100,000 in UM benefits. *Id.* ¶ 29 & Exh. M.

On November 15, 2012, Baham's counsel received a check from Hartford in the amount of $100,000, with a notation stating that it was a "Full & Final Settlement." *Id.* ¶ 30. Baham voided and returned the check, advising Hartford that it had violated Fla. Stat. § 627.155(1)(b)(2) by making a claims payment without providing a statement setting forth the coverage under which the payment was made. *Id.* ¶ 32. Baham also maintained that it was inherently unfair to tie undisputed insurance benefits to an accord and satisfaction. *Id.*

On December 14, 2012, Hartford filed a formal response to the second CRN. *Id.* ¶ 33. Hartford delivered a copy of the response to Baham's counsel, accompanied by a new check for $100,000, and a statement setting forth the coverage under which the payment was made. *Id.* ¶ 33 & Exh. P. On March 17, 2014, the state court entered a stipulated final judgment against Hartford in the amount of $100,000. *Id.* ¶ 34 & Exh. Q.

On September 19, 2014, Baham filed the instant bad-faith action in state court. Doc. 2. Hartford removed the case, invoking this Court's diversity jurisdiction. Doc. 1. On November 12, 2014, Hartford filed its Motion to Dismiss with Prejudice (Doc. 5), which is now ripe for disposition.

## II.   LEGAL STANDARD

To survive a motion to dismiss, a pleading must include a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting Fed.R.Civ.P. 8(a)(2)). Labels, conclusions and formulaic recitations of the elements of a cause of action are not sufficient. *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Furthermore, mere naked assertions are not sufficient. *Id.* A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). The court, however, is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint. *Id.*

## III. DISCUSSION

In Florida, an insured is authorized by statute to bring a first-party bad-faith claim against an insurer, when the insured is damaged by: (1) the insurer's failure to attempt "in good faith to settle claims when, under all the circumstances, it could and should have done so;" or (2) the insurer's violation of enumerated statutory provisions, including Fla. Stat. § 626.9541(1)(i), which prohibits unfair claim settlement practices. *See* Fla. Stat. § 624.155(1)(a), (b). In this case, Baham premises his bad-faith claim on Hartford's failure to attempt to settle in good faith, pursuant to § 624.155(1)(b), and Hartford's unfair claim settlement practices, pursuant to § 624.155(1)(a) and § 626.9541(1)(i).[2] *See* Doc. 2, ¶¶ 44-61.

As a condition precedent to bringing a statutory bad-faith claim, the insured must provide 60 days' written notice of any violation to the Florida Department of Financial Services and the insurer. *See* Fla. Stat. § 624.155(3)(a). The notice must state with specificity: (1) the statutory provision violated; (2) the facts and circumstances giving rise to the violation; (3) the name of any individual involved in the violation; and (4) the specific policy language, if any is relevant. *See* Fla. Stat. § 624.155(3)(b). The 60-day window provides a final opportunity for an insurer to

---

[2] Section 626.9541(i) does not create an independent right of action. *Buell v. Direct Gen. Ins. Agency, Inc.*, 267 F. App'x 907, 909 (11th Cir. 2008); *Zarrella v. Pac. Life Ins. Co.*, 755 F. Supp. 2d 1218, 1228-29 (S.D. Fla 2010).

comply with its claims-handling obligations. *Talat Enters., Inc. v. Aetna Cas. & Sur. Co.*, 753 So. 2d 1278, 1284 (Fla. 2000). If the insurer pays damages or corrects the circumstances giving rise to the violation within the 60-day window, no bad-faith action will lie. Fla. Stat. § 624.155(3)(d); *Talat Enters., Inc.*, 753 So. 2d at 1284.

In addition, "a first-party bad faith claim does not accrue until there has been a final determination of both liability and damages in an underlying coverage claim." *State Farm Mut. Auto. Ins. Co. v. O'Hearn*, 975 So. 2d 633, 635 (Fla. 2d DCA 2008). Therefore, in order to state a claim for bad faith, "the plaintiff must allege that there has been a determination of the existence of liability on the part of the insurer and the extent of the plaintiff's damages." *Heritage Corp. of S. Fla. v. Nat'l Union Fire Ins. Co. of Pittsburg*, 255 F. App'x 478, 481 (11th Cir. 2007); *Progressive Am. Ins. Co. v. Rural/Metro Corp. of Fla.*, 994 So. 2d 1202, 1208 (Fla. 5th DCA 2008).

In assessing whether an insurer acted in bad faith, courts examine the totality of the circumstances, including the insurer's efforts to promptly resolve the coverage dispute, the substance of the coverage dispute, and the insurer's diligence and thoroughness in investigating the facts. *State Farm Mut. Auto. Ins. Co. v. Laforet*, 658 So. 2d 55, 62-63 (Fla. 1995); *Heritage Corp. of S. Fla.*, 255 F. App'x at 482 n.3. Bad faith may be demonstrated by a refusal to disclose policy limits, or by other delays in settlement negotiations that are "willful and without reasonable cause." *Powell v. Prudential Prop. & Cas. Ins. Co.*, 584 So. 2d 12, 14 (Fla. 3d DCA 1991). The question of whether an insurer acted in bad faith is ordinarily an issue for the jury. *Berges v. Infinity Ins. Co.*, 896 So. 2d 665, 680 (Fla. 2004); *Vest v. Travelers Ins. Co.*, 753 So. 2d 1270, 1275 (Fla. 2000).

In the instant motion, Hartford makes two primary arguments. First, Hartford maintains that Baham does not have an actionable bad-faith claim because Hartford cured the violations identified in the second CRN by tendering the full UM policy limits within the 60-day window. Second, Hartford maintains that the first CRN was not sufficiently specific so as to require a cure. In response, Baham argues that the first CRN was sufficiently specific, and that Hartford failed to cure the violations identified in the first CRN within 60 days, creating an actionable bad-faith claim. Baham also maintains that Hartford failed to cure the second CRN because Hartford's payment did not include prejudgment interest and because Hartford failed to cure the other statutory violations identified in the CRN, relating to unfair claim settlement practices. Baham additionally asserts that any cure of the second CRN would not retroactively cure the first CRN. For the reasons that follow, the Court holds that Baham has stated a claim for relief based on the first CRN, but that he fails to state a claim for relief based on the second CRN.

As an initial matter, the Court finds that the first CRN was sufficiently specific, as it included each of the required elements under § 624.155(3)(b), including the facts giving rise to the violation, the name of the individual involved in the violation, and the statutory provisions violated. *See* Doc. 2, p. 100. Although Hartford argues that the CRN did not request a specific dollar amount as a cure, the bad-faith statute does not require a CRN to include a dollar amount. *Hunt v. State Farm Fla. Ins. Co.*, 112 So. 3d 547, 551 (Fla. 2d DCA 2013); *Porcelli v. OneBeacon Ins. Co., Inc.*, 635 F. Supp. 2d 1312, 1318 (M.D. Fla. 2008). A fair reading of the CRN indicates that Hartford could instead cure the alleged violations by acknowledging that Baham's claim exceeded $25,000 and offering to settle the claim. *See Altheim v. GEICO Gen. Ins. Co.*, No. 8:10-cv-156, 2011 WL 161050, at *4 (M.D. Fla. Jan. 18, 2011) (finding that the CRN was sufficiently specific where common sense suggested that the plaintiff was seeking an increased settlement

offer); *accord King v. Gov't Emps. Ins. Co.*, No. 8:10-cv-977, 2012 WL 4052271, at *7-8 (M.D. Fla. Sept. 13, 2012).

Baham otherwise states a plausible bad-faith claim based on the first CRN. Baham alleges that the CRN was not successfully cured within 60 days, and that Hartford ultimately agreed to pay the UM policy limits of $200,000. Doc. 2, ¶¶ 22-27, 33. Baham further alleges that the state court entered a final judgment as to liability and damages in the underlying coverage action. *Id.* ¶ 34; *see Safeco Ins. Co. of Ill. v. Fridman*, 117 So. 3d 16, 20 (Fla. 5th DCA 2013) (holding that a confessed judgment in the amount of UM policy limits provided a sufficient basis to pursue a bad-faith action). Although Hartford maintains that it responded to the CRN and requested additional information, that argument pertains to the ultimate question of whether Hartford acted in good faith or bad faith in handling Baham's claim. *Laforet*, 658 So. 2d at 62-63.

By contrast, the Court finds that Baham fails to state a plausible claim for relief based on the second CRN. The Florida Supreme Court has squarely held that payment of the policy limits, within the 60-day window, effects a cure within the meaning of § 624.155(3)(d). *Talat Enters., Inc.*, 753 So. 2d at 1280-81. The insurer is not required to include additional, extra-contractual damages in order to effect a cure. *Id.* at 1283. Here, the Complaint alleges that Hartford tendered $100,000, representing the remaining unpaid UM benefits, within 60 days after Baham filed the second CRN. Doc. 2, ¶¶ 17, 27, 29, 33. As a result, no bad-faith action lies based on the second CRN. Fla. Stat. § 624.155(3)(d); *Talat Enters., Inc.*, 753 So. 2d at 1284.

In response, Baham argues that Hartford did not fully cure the second CRN because the final payment did not include prejudgment interest. Baham cites no authority in support of his contention that an insurer is required to include prejudgment interest in order to effect a cure under the bad-faith statute. Moreover, it is well-established that prejudgment interest is not available in

7

an underlying contract action for UM benefits, as a UM claim is essentially a claim for unliquidated personal injury damages. *Aetna Cas. & Sur. Co. v. Langel*, 587 So. 2d 1370 (Fla. 4th DCA 1991); *Cooper v. Aetna Cas. & Sur. Co.*, 485 So. 2d 1367 (Fla. 2d DCA 1986); *see also Columbia Cas. Co. v. S. Flapjacks, Inc.*, 868 F.2d 1217, 1222 (11th Cir. 1989). Baham cites no authority suggesting that his UM claim involved the type of "vested property right" that would entitle him to prejudgment interest. *Scheible v. Joseph L. Morse Geriatric Ctr., Inc.*, 988 So.2d 1130, 1134 (Fla. 4th DCA 2008) (quoting *Alvarado v. Rice*, 614 So. 2d 498, 499 (Fla.1993)); *cf. Lumbermens Mut. Cas. Co. v. Percefull*, 653 So. 2d 389, 390 (Fla. 1995) (distinguishing UM cases, involving unliquidated personal injury damages, from health insurance claims, sounding in contract).

Baham also argues that Hartford did not fully cure the second CRN because Hartford's payment failed to rectify the statutory violations identified in the CRN relating to unfair claim settlement practices under § 626.9541(1)(i).[3] This argument is also unavailing. The bad-faith statute provides that no action will lie if, within the 60-day window, "the damages are paid *or* the circumstances giving rise to the violation are corrected." Fla. Stat. § 624.155(3)(d) (emphasis added). In addressing---and rejecting---a similar argument, Judge Gold cogently explained:

> The legislature plainly wrote that an insurer could avoid a bad faith suit by either paying the damages or correcting the circumstances giving rise to the violation. Those curative methods are not limited to any particular cause of action under the statute, and to write in such a limitation would not comport with the requirements of strict construction. Indeed, such a limitation would render the first clause of [§ 624.155(3)(d)] meaningless when actions are brought under § 624.155(1)(a), and permit plaintiffs to subvert the legislatively provided last opportunity to insurers by simply alleging that the failure to settle in good faith was due to improper

---

[3] The second CRN listed the following statutory violations under § 626.9541(i): (1) making material misrepresentations with the purpose of effecting a settlement; (2) failing to adopt and implement standards for the proper investigation of claims; (3) misrepresenting facts or policy provisions as to coverage at issue; (4) denying claims without conducting reasonable investigations based upon available information; and (5) failing to promptly provide a reasonable explanation in writing for the denial of a claim or offer of settlement. *See* Doc. 2, p. 118.

underlying settlement procedures. This court finds that this is not the intended construction of the statute.

. . . .

This court rejects plaintiff's argument that . . . an action may lie even if the insurer pays contractual damages within 60 days because the underlying circumstances giving rise to the violation would still not be corrected. To ascribe such a meaning to the statute would require reading the "or" in [§ 624.155(3)(d)] as an "and," and in inserting qualifying language that was not included by the legislature

*Franklin v. Minn. Mut. Life Ins. Co.*, 97 F. Supp. 2d 1324, 1328-29 (S.D. Fla. 2000).

Moreover, in this case, Baham did not ask Hartford to cure the violations relating to unfair claim settlement practices.  Rather, the second CRN provided, in relevant part:

To cure the violations set forth in this Civil Remedy Notice, Mr. Baham hereby requests that Hartford tender at this time, or prior to the expiration of the statutory cure period, the full amount of Mr. Baham's stacked uninsured motorists coverage (less any prior payments), which accurately reflects the true nature and extent of Mr. Baham's damages.  Therefore, Hartford should tender $100,000 in additional uninsured motorists insurance benefits at this time.

. . . .

Therefore to cure the defects outline in this Civil Remedy Notice, Hartford must:

(1) Hartford must act fairly and honestly towards Mr. Baham and with due regard for his interests in attempting to settle his claim;

(2) Hartford must immediately tender all insurance monies due and owing Mr. Baham;

(3) Hartford must pay Mr. Baham the fair value of his insurance claim;

(4) Hartford must immediately tender all insurance proceeds due and owing Mr. Baham that it believes are fairly owed to Mr. Baham that would reasonably place him back to a pre-loss condition;

(5) Hartford must tender $100.00 in additional uninsured motorists insurance benefits at this time; and

(6) If Hartford is not in agreement with the insured's reasonable demand being submitted at this time, the insured hereby requests that Hartford now make a reasonable good faith counter-offer before the expiration of the cure period.

Doc. 2, p. 122.  This language confirms that the only cure Baham sought was payment of the UM policy limits.  Hartford complied with Baham's demand, and it did so within 60 days.  As a result, under the express provisions of § 624.155(3)(d), "no action shall lie."  Because Baham is not able to state a plausible statutory bad-faith claim as to the second CRN, that portion of Baham's claim will be dismissed with prejudice.

As a final matter, the Court finds that Hartford's cure of the second CRN does not affect Baham's ability to state a claim, under Rule 12(b)(6), based on the first CRN.  Although Hartford ultimately paid Baham the UM policy limits, it is well-settled that an insurer cannot escape liability under the bad-faith statute by paying the policy limits after expiration of the 60-day window. *Safeco Ins. Co. of Ill.* 117 So. 3d at 21.  And Hartford identifies no authority holding that an insurer's cure of a second CRN effects a retroactive cure of an initial CRN.

Accordingly, it is hereby **ORDERED AND ADJUDGED** that:

(1)      Defendant's Motion to Dismiss Complaint with Prejudice (Doc. 5) is **GRANTED IN PART**, to the extent that Plaintiff bases his claim on the second Civil Remedy Notice, filed on October 16, 2012. That portion of Baham's claim is **DISMISSED WITH PREJUDICE**.  The Motion to Dismiss is otherwise **DENIED.**

(2)      Within fourteen (14) days of the date of this Order, Plaintiff shall file an Amended Complaint in conformity with this Order.

(3)      The stay of discovery is lifted.

**DONE AND ORDERED** in Tampa, Florida on March 31, 2015.

*Charlene Edwards Honeywell*
Charlene Edwards Honeywell
United States District Judge

Copies to: Counsel of Record